Case number 23-38-34 USA v. Eric Schuster. Argument not to exceed 15 minutes per side. Ms. Young, you may begin. Everybody left. Good morning. Good morning, Your Honors. Mary Beth Young on behalf of the United States. I'd like to reserve four minutes for rebuttal. Very well. The United States appeals the district court's order dismissing Schuster's indictment for producing, receiving, and possessing child pornography based on the Sixth Amendment right to a speedy trial. In the United States' view, the circumstances of this case, while concerning, don't rise to the level of a Sixth Amendment violation requiring the drastic remedy of dismissal with prejudice. The applicable test, of course, is the multi-factor balancing test of Barker. The first factor, the length of the delay the parties agree is sufficient to trigger further inquiry. Looking at the reason for delay, the time period divides into three segments. During the initial time between 2016 and 2019, the defendant requested multiple continuances, filed an initial motion to suppress, which the district court held a hearing on and denied, sought to file further suppression edit motions, then withdrew them, then refiled one, then substituted counsel. When new counsel came on board, it was more than a year before the eventual set of three supplemental suppression-related motions was filed. And briefing on those was completed in late 2019. So that initial period of delay, the defendant has not raised any issue or fault with the court or government. In the second period that we're looking at... And the first period was really at the defendant's insistence. Correct, correct. I mean, for what that's worth. And we think that does matter to the overall analysis. I mean, in what sense? I mean, can you elaborate on that point? I mean, of course it matters, because does it matter beyond that at least one of these periods is his fault, basically? At least one of these periods is his fault. And this court, in looking at reason for delay, has looked comparatively in both Zabawa and Shrain. The court has done sort of a comparative, quantitative look in assessing reason for delay. Do we need to break out these reasons for delay into discrete periods and look at it, or do we look at the whole period and determine who's more responsible for the delay? I mean, I think ultimately you're looking at the whole period, but en route to doing that... If we take the whole period, how would you describe the percentages in terms of who's responsible for the delay? Well, it depends on how, I think, you count the last two periods. So perhaps, certainly the first period, which was lengthy, 2016-2019... Would that be a majority of the delay? Yes, I think it would. And that would be attributable to...  The defendant. So is that the analysis, if a majority of the delay is because of the defendant, no Sixth Amendment violation? Well, I think, Judge Bush, frankly, that nothing about Barker is probably that simple.  I think... I'm trying to understand. Certainly, I would say this... Do you really take a look at the discrete periods, or are you really looking at the aggregate, and you're trying to look at the aggregate responsibility? You're looking at the aggregate responsibility. But I do think it's true that if you have a new case that just comes in, and there's one year of delay on the part of the government and the court, compare that to a situation where there's five years of delay by the defendant, then one year of delay by the government and the court. Those are not the same case for Sixth Amendment. It's almost like a sense of unclean hands or forfeiture or something. Yes. The district court, at a minimum, has been given the impression that the defendant is not vigorously and forcefully asserting his rights to a speedy trial. The defendant for three years did delay by doing the motions and then was not diligent in bringing a motion for a speedy trial. But then, for the next ten years, the government, the trial court fails to act, the government doesn't act, and the defendant does bring motion after motion, and there's no action for the next ten years. I mean, we'd look at that segment, wouldn't we? The ten? Yes. Of course. Okay, say it's reversed then. Say that you have six years where, okay, say... Three and six, I think that's what you want. Say the majority was... Government's fault. Well, no, say the majority was the defendant's fault. Okay. Say for eight years he doesn't do anything, but then for six years after that he vigorously wants to go to trial. You say, well, the percentages here for the delay favor the government, and it's only six years that he sat in prison wanting a trial every day, but because he didn't do anything for eight years, and eight years is more than six, percentages favor the government, and therefore that factor favors the government. That doesn't make any sense, does it? I think the government would acknowledge that's too easy. However, I would say that this Court's analysis in a couple of cases about why I think entraining comes close to looking like that's what it's doing, you know, eight minus six. I can't believe that that would be allowed under the Sixth Amendment. Nor would the government argue that. You can say six years in a row and say, well, you didn't do anything for eight years. I would have never. So you're out of luck. I would, however, say, Judge Griffin, that that eight years figures significantly into how you weigh the six. It's not, back to my starting example, the same as six off the door. It's not the same as the six off the door. The law doesn't give us any rule or principle to, you know, sort through all this. Everybody's right. Judge, you said that. The United States did not. Well, that's another point. If everybody's right, we review this for an abuse of discretion, do we not? No, no. It's a de novo review. It's a clear error review for subsidiary fact-finding. All right. Clear for subsidiary fact-finding, de novo for the ultimate question. Well, let's picture our hypo here. If it's not a pure majority decision, you do need to look at an absolute sense of how long the government delay is. And presumably there's some sliding scale there where, you know, maybe if the delay from the defendant has been six years and you have a delay of one year by the government, that that wouldn't be considered lengthy. But if you had a length of a delay, say, of two or three years, maybe you're moving more into it. I agree, Judge Bush. And in thinking about that, of course, we haven't even got to the other factors. I guess you're short of the right. How much time, what percentage of the time of delay would you say is attributable to the defendant's actions and how much is attributable to the government's actions? So in the government's view, the maximum that should be attributed to the government, really to the district court, is that 18 months at the end when the court did not set a hearing on the motion to compel. Okay. And before that, how much time for the defendant? Before that, May 2016 to April 2019 is sort of an undisputed defendant. The middle period was April 2019 to December 2020. So that was 20 months. However, there's sort of subsections of that period because part of it was doubly justified by COVID from March 2020 to December. Do you have a right to imprison people just because of COVID? Is a speedy trial, is a Sixth Amendment suspended during COVID? Not suspended, but courts have understood COVID-related delays as not being something that is, for which fault is attributed to the government, sort of a neutral delay. Okay, it's a neutral delay. Yes. So the middle period is contested in terms of the fault. That's the period when the suppression motions were pending. And the court indicated that the reason it did not set a hearing on those motions, which was requested, the defendant had requested a hearing, both on his second motion to suppress and a Frank's hearing, was that the district court was waiting on cases from this court. Is that a legitimate reason? The United States thinks that is a legitimate reason. Remember that this is not a case-specific motion to suppress. This involved a net warrant out of the Eastern District of Virginia. I think everyone was, Judge. It's keeping the defendant in jail. It's pre-detention, waiting for us, the Court of Appeals, to resolve other cases. And then we do that, and would the judge be justified to wait to see what the Supreme Court does on the writ of certiorari after that? And that delay would be justified for that period as well? You're not going to like the answer, but I think it's a barker answer. It would depend on the circumstances. This wait was not so long. It's incredible that a defendant can be forced to stay in jail while the judges for years are deciding an issue that may have something to do with this case. Isn't the district judge has a responsibility to resolve the case as it's presented to him and not wait? I mean, yeah. Yeah. I mean, with due respect to the District Court, I mean, this reason is a bad, bad reason to keep somebody in prison for as long as this guy was for intervening. I would note that the motions themselves had taken over a year for the defendant to prepare. And one of the reasons that the defendant took that long... No, I agree with you as to preparation. I'm talking about the delay of the court. And the delay of the court is attributed to the government. And we have the government on one side. We have the defendant's fault on the other side. Because they're one sovereign, right? Yeah, I agree. The government is the capital G, yes. If the judge doesn't do his job, that weighs against the government and in favor of the pretrial detainees. If I may, Judge Griffin, a factor here, we do think matters that the defendant had raised waiting for other cases as a reason for the lengthy time to prepare his motions. But once he filed, he wanted it resolved. Moving to an assertion then, during that period... Just one last point on that, and maybe it's just a cautionary tale, but the government stuck with the responsibility for the district court's delay. And maybe the government should have joined hands with the defendant and said, hey, Judge, we need an answer. Balls and strikes. You can't just be passive because you're going to bear responsibility. So is the defendant. Barker makes clear that assertion of the right is entitled to significant evidentiary weight. And the defendant waited until that motion for a status conference in October to bring this issue to the court's attention. The government acknowledges at that time that the defendant did assert his right for the first time, October 2020. Now, at that point, several months had been subsumed by COVID-related delays layered on top of this waiting for the other cases. And to the waiting for other cases point, I would note that the Bateman case, which was one of the things that was being waited on, was extremely relevant contrary to Mr. Schuster's suggestion. It was raising some of the exact same Frank's arguments. So that's the middle period. The last period is the period that the... And I will note that the district court called that middle period justified. So to the extent we're looking at what the district court thought of that period, it labeled it justified. Without any discretion, it doesn't matter what he labeled it. Unless you think that's a factual finding. That he finds it justified? That's not a factual finding. My opponent is arguing for deference here. And the United States acknowledges in Doggett the question of negligence. The court did say it is reviewed with considerable deference as a mixed question. So if you view that justified that way... Bottom line, how many months of this pretrial incarceration do you attribute to the government? The 18 at the end. Only 18 months? Really, the United States would submit it would be a subset of the 18 because some portion of that would legitimately and properly have been used to address the motion to compel. All right. And you say that he only asserted his right to a speedy trial once at the status conference, but he also did bring a motion for bond, saying that he had been incarcerated for years and years and he wanted to be out on bond. He brought a motion for bond. You don't think that's an assertion? I don't in the circumstances of this particular motion for bond. Isn't the basis for his motion for bond is that he had been incarcerated so long that I'd been incarcerated so many months and that implicitly is I'm not getting my speedy trial that I'm entitled to? He didn't mention speedy trial. He didn't mention pending motions. It was an extremely brief bond motion. It did not get resolved. It did not get resolved. Isn't the reason that he wanted bond is because he had been incarcerated so long? Pending trial? I would say that's accurate, Judge. That has something to do with speedy trial, doesn't it? At a minimum, and Barker tells us this, you look at the force and frequency. If we count this as an assertion, it's not a very direct or forceful assertion, and the next assertion is when he files a motion to dismiss, which is kind of after the fact. You say that a person is incarcerated pre-trial detention for seven and a half years without having a trial, and he's just sitting in jail. It's unusual, but I also don't think it's even fair to say seven and a half. When the first four are— How many years is he sitting in jail? He is sitting in jail for seven years, but the first several are at his own behest. And think about why he was content to take the four years. He's facing 15 years mandatory minimum on the production count, and he said he's not interested in going to trial for good reason given the evidence in this case. So it becomes the pre-trial motions are the avenue, and he's willing to— Is it unusual in the Eastern District of Michigan for a person accused of a crime to sit in jail? I can't tell you about Detroit, but in the Southern District of Ohio, it is unusual. This is obviously not in the record and probably not relevant, but I'm going to ask anyway. Were there any kind of plea negotiations going on while this was— There were plea negotiations. Early on in the case, there had been plea negotiations, and there continued to be plea offers really throughout the period in various installations, if you would. I didn't get an answer to my question. How usual is it in this district for a pre-trial detainee to sit in jail seven and a half years before having a trial? How usual is that? It is not at all usual, Your Honor. Is it very exceptional? Probably, I would say it's very exceptional. Have you seen a case like this before? No, but I've also not seen a case submit one round of suppression motions, another round of three motions with 1,000 pages of exhibits after taking a year to prepare them. It wasn't my question. I said, have you seen this before? Seven years. I doubt that I've personally seen seven years. Have you heard about it in your district? Not to my knowledge. You know of another case? Young, young, the defendant was detained 11 years. That was not out of my district. All right, so this is highly unusual. And young, there was not a six amendment violation. All right, thank you very much. You'll have your rebuttal. I apologize, Your Honor. May it please the court, counsel, Your Honors. If I could, I can address one of the questions you had just asked Judge Griffin. In our brief, and I'm sorry I don't remember the name of it, we cited another sex case that was also pending before the same judge that lasted six years. The statistics of this court, unfortunately, even during the period of COVID, this court was regularly disposing of civil motions at a fine rate, almost 200 civil motions. Only three criminal decisions were rendered in the same time. Which entity are you talking about here? This district court that ruled on this case. This judge ruled over, almost issued 200 civil decisions, and only three during that period of time. We can't talk about April of 19 as part of COVID. COVID was March of 20. These motions were pending for 11 months without any decision whatsoever. So to say that it was COVID is wrong. It just isn't. And during COVID, this court... What's the status quo, by the way? I mean, is your client incarcerated right now or not? No, sir. He is out. In fact, that was my client that I was just spoken to. Served in the United States Army overseas. And didn't see some of the same conditions that he saw in this county jail. That has led other district courts to vary downward because of the conditions that were over there. Locked down 23 hours a day. He didn't see the sun for seven years. The sun. Because there are no windows. They're not allowed out. So he was released as a result of the district court's ruling that we're looking for? Yes, sir. And he had applied for bail earlier that was denied? Well, it was never ruled upon. It was never even answered by the government. It just sat without the government even responding or the court ever responding. It just ignored that motion. And the Sixth Circuit has said before, it has been recognized that a motion for bail is another assertion of right. You don't have to say my speedy trial because for that reason, I'm asking you to get out of here because I'm just sitting here. There are always plea negotiations in any criminal case. It doesn't mean somebody will not end up in trial depending on what the ruling are on those motions. You know, the government didn't assert until August of 22 that it asked for a ruling on any of the motions. It wasn't until Mr. Schuster had to file his second motion to dismiss because the first one was never ruled upon. It sat. So he had to file a second one. When was the first one filed? The first one was filed, and I believe it was April of 22. And it sat. And so it wasn't until August of 22, basically, if you take into consideration, you give the court about 30 days, take it under advisement, and it still wasn't ruled upon, he filed a second one. And it wasn't until the government responded to that one that it moved for the very first time in August of 22, hey, let's move this case along. Why don't you rule on these motions? What was your client's position on whether the district court should wait on the Sixth Circuit's ruling during that period? Well, I think the court, quite frankly, the district court, this judge, may have been confused either with another case or another communication. And here's the reason why. There are three cases cited in the court's dismissal, originally, or denial. And it cited a case of Jones. Jones was filed a brief the first time you would ever know what an issue was when the appellant filed a brief. Filed a brief in April, a month, 19, before we even filed our motion, motions that were under consideration. It was an Anders brief. It said there is no issue here. And it was decided by July of 19. But the problem is there was never three cases pending before this court. Jones, Bateman, and Collard were never pending at the same time. So the cases that this district court cited never existed at the same time. Bateman, that brief was filed in June, two months after all these motions were pending. Bateman was a concession, conceding any error in saying, I'm just reserving this in case the law changes. Those two cases within two months of having... What I'm getting at is in the argument of your motion, I assume you, did you have an oral argument or was it all just briefed? It was all just briefed. Okay. And was there any discussion in your briefing about these pending, these other cases of whether the court should wait to... Well, it was not until the trial court, this court, ruled against us and the motion was dismissed that we learned of the fact that it claimed that it was waiting on three Sixth Circuit cases. I think the question is, did you ask the court to wait? Yes. No. That's the question. Okay. Did you acquiesce in them waiting? I don't believe so because it was never asked. Did you, in one way or another, urge that the court render a decision sooner? I mean, after these lengthy periods passed, without a decision, did the defendant assert his speedy trial rights, so to speak, and say, hey, what's the holdup? In writing, no. There's no record of phone calls or anything else at all like that about steps. The first time you asserted your speedy trial right acts would have been, what, in 2021? It would have been through the motion for a status conference in 20. 20. And what month and date? That was in October of 20. It took about 60 days to have that status conference. But as the Sixth Circuit has ruled before, Embarker also noticed, you don't even have to do that for that time to come. You don't need that assertion. The fact that you do make that assertion really weighs in favor of the defendant. If you have facts where both sides are doing things to delay the trial, it seems to me you've got to have some notice provided to the district court, hey, you're serious, you want to get to trial. Otherwise, the course of dealing seems to me that both sides are kind of like, you know, doing things to delay the trial. Well, I would take a little bit of issue with it for this reason. First of all, this was, as you know from all the playpen cases, an intense case. So as counsel for the government noted, a year might not be too long to wait until somebody got up to speed, got motions filed, and the case was ready. And that's about what happened here. Then there was a breakdown. And some of the breakdown we're not going to get into, but new counsel came in. And that was me. And in September of 18, and it's the only time the court made any mention of anything with the government, in September 20 of 2018, a notation order noted the defense counsel is working diligently. It was the finding that happened in September of 18 to get these motions filed. And they were filed by October. So for the government to say the defendant was just delaying things and delaying things and trying to do something is not recognizing the record when the district court said defense counsel is being diligent in trying to get done what he needs to get done. And within a month of that finding, three motions were filed. Those three motions were a motion to reconsider the earlier denial, a motion for a Franks hearing, which quite frankly you don't get a hearing until the court rules you have a hearing. All you have to do is read that motion and decide whether or not. I will concede at this point there have been 22 rulings saying that the playpen motions for Franks are unfounded. So the trial court could have said you're out the door on Franks in a second if he chose to or give us a hearing that we thought we were entitled to. The motion to reconsider doesn't require evidence. It only required a finding. So the only one that would have required a hearing would have been the motion on the exploit. And that was raised in response to other cases that came up in learning that there was potentially a trespass issue that had never been raised before under use of the exploit in the NIT. And the reason for that was Agent Alfin testified in another hearing saying that there were two items that were used in that search, the electronic search, which gave me the idea maybe the district court, or I'm sorry the magistrate, in the Eastern District of Virginia was never told that there were two different electronic uses to get in. Basically one to knock on the door and the other one to go in. Agent Alfin, by the time this court got around to even doing anything, was gone. So to say that there was no prejudice on the loss is absolutely wrong. Agent Alfin would have been extremely necessary to that second motion on the exploit. That sat undecided without a hearing for 11 months before COVID. There could have been a hearing. Then COVID happens. All that court has to do is rule on the Franks or rule on the motion to reconsider and maybe say I can't do a hearing right now because of COVID. Maybe we can, maybe we can't. Is your client's right to a speedy trial under the Sixth Amendment suspended during times of COVID? I think absolutely not. I think at some point the question might be it might require some court order. I can't remember all the orders that were issued from the district court chief judge, but they were having some form of trials. They were time issues. The chief judge said I'm asking as a constitutional principle. I think not. Does a pandemic suspend constitutional rights? I don't think so. I don't. Okay, I think it's kind of important because if it doesn't, I think it's counted against the government. Maybe more on a neutral basis or not.  But the government is the one that's incarcerated your client. Right. Pending trial. And I was worried all the way during this COVID situation when there were not trials going on at all. And people are sitting in prison for years. Yeah, Milan. And I was thinking at the time, we've got a Sixth Amendment problem here that nobody's even addressing. And so, all right, how many, bottom line, how many months of the seven and a half year delay do you attribute to the government total? And tell me how you come up with that figure. Okay. And if I could just wish, I think that that first period, quite frankly. Do you want to just answer my question? Yes, sir. I would, it would clearly be from April of 19, I think until December of 20. And the reason for that is that's when the status conference was. And I said I was going to file a motion to compel based on the government's refusal to turn over discovery. And that was the reason for it. And that would be suspended, I think, until February of 22, when there was a, the judge could have ruled on that motion to compel and did not. And from February of 22, all the way through, whether you want to counsel, I filed my motion to dismiss, or my second motion to dismiss, or when the court ruled. I just want some figures, some numbers. How many months? We can go into the details later. I mean, are you saying that there's three and a half years? I think it was, I think we at one point calculated at least 39 months over three years was attributable to the court or to the government. I'd like to ask you about the period between April 2019 and at least October 2020. I mean, we touched on this a little bit before. Yes, sir. But as I think you know, the third factor of Barker is when and how, the manner in which the defendant asserts his speedy trial right. Yes, sir. And, you know, I think we're on common ground here in saying that the court should have decided the motion to suppress, I think it was, the evidentiary motions a lot sooner, not be waiting for these Sixth Circuit cases. But, I mean, I think you've acknowledged that from April 19 until the request for a status conference in October of 2020, which is a lot of this COVID period or some of it. I mean, whatever, forget I said the COVID word. For that period, the defendant does not assert his rights, does not step up and say, hey judge, I'm sitting here in this awful jail and, you know, how about, you know, we get a ruling. And so under the third factor, Barker, doesn't that weigh against granting relief? I really don't think so. And I think the reason is because under Barker and the cases after that, it talks about that the court and the government still have the first duty to make sure that these things get done. It's not exculpating the government by any means. But it's kind of assuaging some of that responsibility. I mean, it's a factor. You know, it's like whose fault is it? Did the defendant sort of vigorously assert his right or not so much? And I just wonder, just for this factor, I'm not saying it renders the delay meaningless by any means, but to the extent, you know, we're just trying to balance all this stuff. So the district court at first denying, first denying said that it weighed against us. And then when we filed the motion to reconsider, it had never really considered our motion for a status conference, then looked at that and said, now that I see that, I'm moving that away from the defendant and I'm moving it to the neutral category. What he also missed, however, and I would submit puts it back over, is under Cain v. Smith, the motion for bail is another assertion of it. And the district court missed that. I think that is an assertion. I read the motion. But the district court in granting the motion to dismiss. Oh, I guess the 21. Right. But the motion to dismiss is the, I mean, the motion to dismiss, or the order to dismiss, only mentions the assertion of right being that status conference. It never considered the bail. So it was neutral in terms of what the court found at that point. But it should have been even more in the defendant's favor, I would suggest, because of the bail motion. So I think those two assertions move him from what the district court found neutral to where we would suggest it should be slightly in favor of the defendant. And, you know, these factors are not gained each one. And you don't get to go once the first factor of the length of time. Everything else is a weighing process. And this is extremely unusual. We have to at least admit that a district court finding that it participated itself in creating a speedy trial violation is extremely unusual. Every other case before this court has always been the other way around. I have a question. In my notes, you indicated the motion for the status conference was October 20th of 2020. Yeah. When you first asserted your claim to a speedy trial. Okay. Yes, sir. And I also have in my notes that you made some indication to the court a couple of months later to withhold any decision on pending motions until the court had decided a motion that you were yet to file. Does that ring a bell of something else you told the court two months after filing? It was the December 3rd status conference. There's a transcript of it and a record. And what occurred at that status conference, it was a response to us asking for, hey, when are we getting a ruling? When is this going along? What had happened in the interim was another case came out of another district raising an issue about whether there was additional discovery that might be forthcoming. I'd asked the government for it and the government told me I was not going to get it. That's what happened between the two. So you're still seeking discovery at this point after you've already filed a motion for a speedy trial? I have asserted our speedy trial. What had occurred was another case came out on another playpen case that lent itself that there was potentially some additional discovery that happened after the status conference was asked for. But, yes, that's why I'm suggesting. Wouldn't that be contrary to the notion of needing a speedy trial if you're trying to get more discovery? It would not have prevented a ruling on any of the motions. But what happened is the motion to compel was filed immediately. It was filed within two weeks of that status conference. It was filed in December, two weeks after a status conference was filed. And then it sat, never ruled upon, ever. It's to date. All it needed was a yes or down. You get it or not. And if it was up, it might have caused a delay. But if it was down, then those other cases, decisions, and those other motions are already right, right then and there. That's all required. Yes, you get it. No, you don't. You brought this under the Sixth Amendment, your right to a speedy trial. Yes, sir. Why didn't you also bring it under the statute? I think in reality, because under the statute, it would have just potentially resulted in a motion or a ruling to dismiss without prejudice. And the government would have just been fair to reindict. And I thought it was a stronger Sixth Amendment. Okay, because under the statute, it's without prejudice? Normally, yes, sir. Normally? Yes. I've never seen a case any other way. Because normally, it's just the 70 days it goes, and you haven't violated the Sixth Amendment yet. And the Sixth Amendment can be with prejudice. And I thought that this was to the point on it. I mean, some speedy trial. The Speedy Trial Act is a little more definitive, isn't it, as to what's a violation and what's not, as opposed to these five factors that we consider and whatever.  But I think it can give some guidance within it. What I mean by that is the guidance about whether or not, after 30 days, the case is considered under advisement. So when you're trying to calculate speedy trial time, it normally says 30 days after the motions are filed, it's under advisement. Any time after that counts against the court. Can we use the Speedy Trial Act deadlines for guidance under the Sixth Amendment? I know that that's the policy of Congress. But I think that shows what Congress thinks the Sixth Amendment, at a minimum, should use. And, I mean, I saw this case as a violation of the Speedy Trial statute. I mean, I've dealt with those cases before. And those deadlines set in the statute are clearly out the window here. And should we use those as guidance? I think it gives you some guidance in terms of what's reasonable. Right, Congress? It at least had made a determination in terms of what is normally reasonable. And in this case, it obviously is not. I think there's no question about that. I know I'm out of time. I'm more than happy to answer any other questions the Court has. No questions. Okay. I appreciate your time. Thank you very much. I have a bit of a grab bag of points in rebuttal. Bateman was mentioned as a concession. It was a concession on one issue, not on the Franks issue that I mentioned. It was a concession on the Moorhead issue, which by that time had been resolved, the extraterritoriality issue. The question about whether there was acquiescence in waiting for those cases, my opponent mentioned that the first mention by the District Court of those Sixth Circuit cases was in its speedy trial orders. That's not accurate. It is as far as mentioning their names, but the Court in its December 2020 status conference, which is transcribed, discussed the fact that it, as discussed at our brief at 16, there were Sixth Circuit cases pending and one came down. There was another pending. We touched base with you and said, hey, does that resolve our motion? So the Court had mentioned this much earlier than its speedy trial orders in the December 2020 status conference. Regarding Counsel's mention that he was working diligently, to be clear, the government doesn't mean to fault Counsel's diligence in preparing the motions. And to the extent that the argument is, look, this was complicated, networked, et cetera, the United States agrees. But rather, the fact that it made sense to take a year to prepare the motions and suggest that at least the 11 months to the beginning of COVID for the Court to resolve the motion is not so out of line. Why? I mean, come on, it's a year. I mean, it's a motion. He's not even having a hearing. He planned to have a hearing. We decided stuff uninterrupted. There are other district courts, not, frankly, some outside of our circuit that never stopped doing trials. Raleigh, North Carolina, never stopped doing trials. The idea that somebody can't decide a motion on paper and type something in a computer, I mean, it's just not very persuasive. Understood. It was three motions, lots of exhibits, and Counsel had taken a certain amount of time, that's my point. Regarding the prejudice as to this oppression hearing, that's not an argument. Yeah, what about the agent? That was an argument they made below. That's not an argument he's made in his brief on appeal. Okay, but I'm asking you. Yes. I mean, because I read the briefs a while ago. Remind me why you think the agent's passing was not prejudicial to the defense. So a couple of things. For one, the agent passed before the period, the motion to compel period, which was the period the district court found attributable to itself and hence the government. So it was already over. The other issue is while Agent Alphon was certainly important to the Operation Playpen, he also certainly didn't work alone. He has testified on this issue in transcripts, which have been cited in this case and elsewhere. It was not a uniquely necessary witness. Regarding COVID-related delay, I will just point the court to page 39 of our brief and this court's decision in Allen in 2023, which said that we and other courts have treated this type of delay as a valid reason that weighs against the defendants or at least a neutral reason. COVID weighs against the defendants? That is what this court wrote in Allen. My opponent's calculation of 39 months added to the 18 at the end, the full 20 for the motions to suppress. This court in Young noted that when a defendant files motions, ordinarily he can't use those motions to raise a speedy trial claim. Now the United States would acknowledge that there may be a limit to that if you look at the Supreme Court in Loud Hook. Ms. Young, you're out of time. I have no further questions. Thank you for your argument. Mr. Gallagher, I see that you were appointed by the Criminal Justice Act and this represented your client ably in the District Court and ably on the Court of Appeals. Very much. We want to thank you very much for your service. I appreciate it. It's because of your service that our decisions are often reasonable. You make a job easier by doing good advocacy for your client. I appreciate it. So thank you. Thank you, sir. Thank you both. We will endeavor to have a speedy decision.